IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

DEANNE S.,
    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,
    Defendant.

Case No. 4:21-cv-04042-SLD-JEH

**Report and Recommendation**

Now before the Court is the Plaintiff's Motion for Summary Judgment (Doc. 12), the Defendant's Motion for Summary Affirmance (Doc. 14), and the Plaintiff's Reply (Doc. 16). This matter has been referred for a report and recommendation. The Motions are fully briefed, and for the reasons stated herein, the Court recommends the Plaintiff's Motion for Summary Judgment be granted, the Defendant's Motion for Summary Affirmance be denied, and the matter be remanded.[1]

**I**

Deanne S. filed an application for disability insurance benefits (DIB) on May 6, 2017, alleging disability beginning on May 10, 2015. Her DIB application was denied initially on August 4, 2017 and upon reconsideration on December 21, 2017. After request for hearing before an administrative law judge, a hearing was held on February 27, 2019 before the Honorable Susan F. Zapf (ALJ), and the ALJ thereafter issued an unfavorable decision on April 18, 2019. The Appeals Council

---

[1] References to the pages within the Administrative Record will be identified by AR [page number]. The Administrative Record appears at (Doc. 8) on the docket.

(AC) remanded the decision. On August 17, 2020, a second hearing before the same ALJ was held at which Deanne was again represented by an attorney, the same vocational expert (VE) that was at the first hearing again testified, and Deanne again testified. Following the second hearing, Deanne's DIB claim was denied on October 20, 2020. Her request for review by the AC was denied on January 6, 2021, making the ALJ's Decision the final decision of the Commissioner. Deanne timely filed the instant civil action seeking review of the ALJ's October 2020 Decision on March 12, 2021.

## II

Deanne challenges the ALJ's October 2020 for the following reasons: 1) the ALJ erred as a matter of law in finding Deanne did not meet or equal Listing 8.06; and 2) the ALJ erred as a matter of law in evaluating and assigning proper weight to the medical opinions and medical evidence of record. With regard to her second point of error, Deanne further argues that the ALJ improperly substituted her judgment for the opinions of nearly every medical professional of record in a decision that is not supported by any medical opinions.

## III

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986).

Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

In order to qualify for disability insurance benefits, an individual must show that his inability to work is medical in nature and that he is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is eligible for disability. *See* 20 C.F.R. § 404.1566. The establishment of disability under the Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). The factual determination is made by using a five-step test. *See* 20 C.F.R. § 404.1520. In the following order, the ALJ must evaluate whether the claimant:

1) is performing substantial gainful activity;

2) suffers from an impairment that is severe and meets a durational requirement, or suffers from a combination of impairments that is severe and meets the durational requirement;

3) suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;

4) is unable to perform her past relevant work which includes an assessment of the claimant's residual functional capacity; and

 5) is unable to perform any other work existing in significant numbers in the national economy.

*Id.* An affirmative answer at Steps Three or Five leads to a finding that the plaintiff is disabled. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005).

 The plaintiff has the burdens of production and persuasion on Steps One through Four. *Id.* However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011).

 In the instant case, Deanne claims error on the ALJ's part at Steps Three and Four.

## A

 At Step One, the ALJ determined Deanne had not engaged in substantial gainful activity since May 10, 2015, the alleged onset date. At Step Two of the disability analysis, the ALJ determined Deanne had the following severe impairments: degenerative disc disease of the cervical and lumbar spine with history of cervical fusion; hidradenitis suppurativa; plantar fasciitis/plantar fascial fibromatosis; asthma; incontinence; obesity; anxiety; and PTSD. AR 41. At Step Three, the ALJ determined Deanne did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. The ALJ specifically found that Deanne's hidradenitis suppurativa (HS) did not meet or medically equal Listing 8.06, and her other impairments similarly did not meet or medically equal the relevant listings. At Step Four, the ALJ made the following residual functional capacity (RFC) finding:

> [T]he claimant has the [RFC] to perform sedentary work as defined in 20 CFR § 404.1567(a) except no more than occasional climbing of ramps and stairs, balancing, stooping, and crawling; no climbing of

ladders, ropes, or scaffolds; no more than frequent bilateral handling; no more than occasional overhead reaching bilaterally; and no concentrated exposure to fumes, odors, dusts, gases, poor ventilation, or extreme cold or heat. The claimant is limited to detailed but not complex work tasks, with a GED reasoning, mathematics, and language level of 4 or less, and no more than occasional interaction with coworkers, supervisors, and the general public.

AR 56. Based on that RFC, the ALJ determined at Step Five that, considering Deanne's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Deanne could perform.

## B

Deanne cursorily argues that the ALJ erred in finding that Deanne did not meet Listing 8.06 and more fully argues that even if the ALJ properly found she did not meet Listing 8.06, her HS equaled that listing such that the ALJ still erred at Step Three. She says the ALJ incorrectly interpreted particular provisions of the prologue to Listing 8.06 (8.00 Skin Disorders), and the ALJ's mere mention that Deanne did not "equal" Listing 8.06 is devoid of any meaningful analysis. The Commissioner counters substantial evidence supports the ALJ's Step Three listing analysis where the ALJ reasonably concluded that "the degree of limitation the claimant alleges far exceeds what can be supported by the medical evidence" (AR 48), and Deanne's argument as to whether she equaled Listing 8.06 is speculative and is primarily a recitation of 20 C.F.R. § 404.1526. *See* 20 C.F.R. § 404.1526 (detailing what medical equivalence is, how medical equivalence is determined, what evidence is considered to determine if an impairment medically equals a listing, and who is responsible for determining medical equivalence).

1

Listing 8.06 is HS "with extensive skin lesions involving both axillae [armpits[2]], both inguinal areas or the perineum that persist for at least 3 months despite continuing treatment as prescribed." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 8.06.  Listing 8.00 explains, "We generally base our assessment of severity on the extent of your skin lesions, the frequency of flareups of your skin lesions, how your symptoms (including pain) limit you, the extent of your treatment, and how your treatment affects you."  20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 8.00.  Listing 8.00C(1) defines "extensive skin lesions" as:

> those that involve multiple body sites or critical body areas, *and result in a very serious limitation*. Examples of extensive skin lesions that result in a very serious limitation include but are not limited to:
>
> a. Skin lesions that interfere with the motion of your joints and that very seriously limit your use of more than one extremity; that is, two upper extremities, two lower extremities, or one upper and one lower extremity.
> b. Skin lesions on the palms of both hands that very seriously limit your ability to do fine and gross motor movements.
> c. Skin lesions on the soles of both feet, the perineum, or both inguinal areas that very seriously limit your ability to ambulate.

*Id*. (emphasis added).  A claimant must show that her impairments satisfy *all* the criteria specified in a listing to meet or equal that listing.  *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999); 20 C.F.R. § 404.1525(d) ("To meet the requirements of a listing, you must have a medically determinable impairment(s) that satisfies all of the criteria in the listing").  The ALJ must discuss a listing by name and offer more than a perfunctory analysis of the listing in considering whether a claimant's

---

[2] Plural for the armpit.  Taber's Online, https://www.tabers.com/tabersonline/view/Tabers-Dictionary/742965/0/axilla?q=axillae (last visited May 2, 2022).

condition meets or equals a listed impairment. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004).

Here, the ALJ considered Deanne's January 3, 2019 letter in which Deanne stated she had at least one lesion every single day since getting the disease over a year before, had lesions in the required places (axillae, perineum, right and left groin, both sides of buttocks), and the lesions were very painful such that she could not raise her arms when she had axillae lesions and could barely walk when she had groin lesions. The ALJ found the provided photos and medical records documented skin lesions involving both axillae, both inguinal areas, or the perineum and documented that Deanne experienced those lesions for a period of at least three months despite continuing treatment as prescribed. The ALJ even acknowledged that Deanne described the HS as causing her very serious limitations including that it was extremely painful to walk when a lesion was present on the perineum and it was impossible to raise her arms when she had a lesion on the armpit. Nevertheless, the ALJ explained that "the degree of limitation the claimant alleges far exceeds what can be supported by the medical evidence." AR 48. The ALJ cited medical records dated between October 3, 2017 and June 23, 2020 which detailed Deanne: was observed to ambulate normally and transition easily; displayed normal range of motion of the joints and was not in any acute distress; had appropriate mood and affect; did not report any skin problems; and ambulated with a steady gait.

The ALJ reasoned that "there is a vast discrepancy between what [Deanne] alleges in connection with her disability application and what is supported by the medical records." AR 50. The ALJ stated that "if the claimant experiences [HS] lesions with the frequency and for the duration that she alleges, then it would be expected that she would report the presence of the skin lesions at many of her medical visits." *Id.* Yet, "the medical records only infrequently mention

7

complaints of skin lesions." *Id*. The ALJ further stated that medical providers should have observed signs of pain/distress, inability to stay seated, difficulty with ambulation, abnormality with gait, difficulty with shoulders/arms movement or "other observations consistent with the significant symptoms and limitations alleged by the claimant on her disability paperwork." *Id*. Yet, "the claimant is routinely observed to be cooperative with normal/appropriate mood and affect, not in any acute distress, and she routinely displays normal gait, ambulation, and range of motion of the joints." *Id*. The ALJ went even further and stated that when abnormalities in movement were noted, they were attributable to Deanne's spinal conditions and/or plantar fasciitis/fibromatosis. The ALJ then concluded the medical evidence of record did not substantiate that Deanne's HS skin lesions seriously limited the use of more than one extremity, seriously limited her ability to ambulate, or resulted in "any other very serious limitations in functioning" such that "Listing 8.06 is not met or medically equaled." *Id*.

The ALJ undeniably confronted the evidence relevant to the listing criteria of "extensive skin lesions." The ALJ's discussion of that evidence vis-à-vis Listing 8.06 was far from perfunctory and, thus, the Court can easily find the ALJ's finding that Listing 8.06 was *not* met was supported by substantial evidence. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) ("substantial evidence . . . means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"). The ALJ's discussion does not indicate, contrary to Deanne's argument, that the ALJ misread Listing 8.00C(1) as providing an exhaustive list of what constitutes "extensive skin lesions."

**2**

The Court is precluded from finding the ALJ sufficiently considered whether Deanne's HS medically equaled Listing 8.06. "An impairment is medically equivalent to a listed impairment if it is at least equal in severity and

duration to the criteria of any listed impairment." *Wilder v. Kijakazi*, 22 F.4th 644, 652 (7th Cir. 2022) (quoting 20 C.F.R. § 404.1526(a)). SSR 17-2p, upon which the Commissioner relies to challenge Deanne's equivalence argument, provides:

> If an adjudicator at the hearings [ ] level believes that the evidence already received in the record does not reasonably support a finding that the individual's impairment(s) medically equals a listed impairment, the adjudicator is not required to articulate specific evidence supporting his or her finding that the individual's impairment(s) does not medically equal a listed impairment. Generally, a statement that the individual's impairment(s) does not medically equal a listed impairment constitutes sufficient articulation for this finding. *An adjudicator's articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step 3.*

SSR 17-2p at *4 (emphasis added). Here, the ALJ included a detailed discussion of the record evidence and her rationale for her RFC finding at Step Four. However, for the reasons explained below, the ALJ erred in her consideration of the opinions of record at that step. The flaws in the ALJ's Step Four RFC rationale thus simultaneously undermine the basis for the ALJ's Step Three medical equivalence finding.

C

Deanne next argues that the ALJ erred in her consideration of the medical opinions and medical evidence of record by, among other things, playing doctor, incorrectly focusing on whether Deanne actually had an impairment rather than on the actual evidence of pain and limitations from her conditions, and failing to account how Deanne's symptoms from her severe conditions were reflected in the RFC. The Commissioner counters that Deanne fails to demonstrate error where, among other things, Deanne only hints that the ALJ did not evaluate some of her

9

impairments sufficiently and her hints fail to identify any error, let alone reversible error.  Finally, the Commissioner argues some of Deanne's arguments amount to pure speculation.

Deanne was 39 years old on her alleged disability onset date and claimed the following conditions limited her ability to work at that time: "Fecal and urinary incontinence [sic]; Steel pins in neck; Arthritis in neck and back; [and] Nerve damage – right hand goes numb and left foot."  AR 517.  In her 77-page Decision, the ALJ spent the bulk of those pages on a discussion of Deanne's medical records and Deanne's subjective statements as to her symptoms throughout the relevant time period.  As for Deanne's subjective complaints, she detailed that her fecal and urinary incontinence caused her to urinate and poop on herself (including in public places), to use the bathroom continuously and without notice, and to wear adult diapers she had to change four or five times a day.  She said that her urinary and fecal incontinence had worsened by October 2017 following the implantation of an InterStim device in her left buttock for incontinence in May 2016.  Deanne detailed her ongoing issues with her cervical spine which had been fused in 2010 following an accident that happened several years before.  Those issues included right arm numbness, neck and back pain, difficulty with driving as it was hard on her neck, extremity weakness, and increased pain with even short periods (20-30 minutes) of standing and walking.  She testified that right foot weakness while driving resulted in several car accidents because her foot did not cause her to stop the car as fast as she needed to.  As for her HS, Deanne detailed that she experienced ongoing pain from the condition which was exacerbated by walking (when lumps[3] present on her perineum and groin) and using her arms (when lumps present in her armpits),

---

[3] Deanne referred to the lesions she had due to HS as "lumps" and "boils."

and her HS and fecal incontinence aggravated each other as both were bacterial issues. She said her HS caused depression, her boils leaked everywhere, she tried several different medications and none fully resolved the HS, and her HS limited her life by ruining any social life or hobbies.

Medical records provided that Deanne sought ongoing treatment for her neck and back pain, incontinence, HS, and other ailments (e.g., stabbing pain in her left foot) regularly between March 2015 and June 2020. She treated with a primary care doctor, gastroenterologist, neurologist, a pain doctor, a urologist, a dermatologist, a podiatrist, a physical therapist, and a psychotherapist. Her dermatologist provided an opinion in January 2018, her primary care doctor provided seven opinions between March 2018 and August 2019. Her gastroenterologist provided an opinion in May 2018. Her physical therapist provided an opinion in November 2019. Her psychotherapist provided an opinion in April 2020. Her urologist provided an opinion in May 2019 and in June 2020.

The dermatologist detailed Deanne's history with HS, the treatment she received for it, the response to treatment, and the fact that "[d]ue to difficulty controlling her symptoms and given limited treatment options I advised that Deanne be seen at University of Iowa for a second opinion on staging and management." AR 96 (quoting AR 969). The dermatologist also stated that, "Despite stage II status [Deanne] has had very frequent recalcitrant disease that is causing distress and impairment of daily activities." *Id*. Deanne's primary care doctor opined that Deanne's HS limited her function due to pain and there was only control, not resolution and no cure. He expressed Deanne would have significant difficulty obtaining gainful employment and was currently (as of March 2018) in disability status due to her variety of chronic conditions. He opined in March 2018 that Deanne could stand and walk for less than two hours of an eight-hour workday, sit for less than two hours of an eight-hour workday,

11

lift and carry less than 10 pounds occasionally and frequently, needed the freedom to shift at will between sitting and standing/walking, needed to lie down at unpredictable times during an eight-hour workday, and would be absent from work more than three times a month due to her impairments and treatments.

Deanne's gastroenterologist opined in May 2018 that Deanne would miss work more than three times a month due to her impairments or treatments and that she was unable to perform a full-time job on a regular and continuing basis. Deanne's primary care doctor opined to the same limitations in July 2019 that he did in March 2018, except he opined Deanne could lift and carry 10 pounds occasionally and less than 10 pounds frequently. His prognosis included that Deanne's conditions had a high probability of being progressive and/or persistent, that several of her medications would not be suitable for a safe work environment and/or driving, and that in his expert medical opinion Deanne would not be able to find or obtain gainful employment due to her disabilities. He again opined in August 2019 that Deanne needed an at-will sit/stand/walk option and would be absent from work more than three times a month due to her impairments and treatments. Deanne's physical therapist opined in November 2019 as her primary care doctor opined in March 2018. Deanne's urologist opined in May 2019 that she needed the freedom to shift at-will between sitting and standing/walking, needed to lie down unpredictably during the workday, needed to void routinely every 30-60 minutes, would be absent from work three times a month due to her impairments or treatment, and was unable to perform a full-time job on a regular, continuing basis. The urologist opined in June 2020 that Deanne could sit for an hour at a time, stand for 30 minutes at a time, sit for four hours total in an eight-hour workday, stand or walk for two hours total in an eight-hour workday, needed a job that permitted at-will shifting from sitting, standing, or walking, needed a job that permitted ready access to a restroom, needed

unscheduled restroom breaks twice during the workday with restroom breaks lasting ten minutes and with advance notice of ten minutes before need for a restroom break, and would be absent from work about three days a month due to her impairments or treatment.

Considering each opinion in isolation, the ALJ first found the dermatologist's January 2018 letter was "not as beneficial to the claimant's disability claim as the claimant seems to believe" and stated various reasons for that conclusion. AR 96. The ALJ otherwise found each opinion of either "no persuasive value" or, at most, "of limited persuasive value." AR 96-107. Deanne argues that it "strains credulity that all of Deanne's treaters in all of their opinion statements are somehow invalid or incorrect when compared to, and replaced by the medical judgment of a law-trained administrative law judge 'playing doctor.'" Plf's MSJ (Doc. 12-1 at pg. 18). Deanne also argues that there is no medical evidence that she would be able to perform competitive employment on a full-time basis, eight hours a day and five days a week, without excessive absenteeism and excessive breaks during the workday. The Commissioner, on the other hand, argues that Deanne wrongly argues that the sheer number of medical opinions she submitted carries her burden to prove disability. The Commissioner also reminds everyone that the RFC assessment is an issue reserved to the Commissioner and based on the entire record, and an ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians. The Commissioner accurately recites the law. *See, e.g.*, 20 C.F.R. § 404.1520b(c)(3)(i) (providing that "[s]tatements that you are or are not disabled . . . able to work, or able able to perform regular or continuing work" are statements on issues reserved to the Commissioner); 20 C.F.R. § 404.1520b(c)(3)(v) (providing that "[s]tatements about what your [RFC] is using our programmatic terms about the functional exertional levels . . . instead of descriptions about your

13

functional abilities and limitations" are statements on issues reserved to the Commissioner); *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007) ("the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions any of the claimant's physicians"). But under the particular circumstances of this case, the Court is not convinced the application of that authority insulates the ALJ's consideration of the opinion evidence from reversible error.

On its face, the ALJ's Decision, specifically where she considered the opinions of record, smacks of her playing doctor. *See Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014) (emphasizing why ALJs "are required to rely on expert opinions instead of determining the significant of particular medical findings themselves"); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) (finding the ALJ improperly disregarded objective evidence of the claimant's limitations submitted by a treating doctor and finding it "quite evident from our review of the record and the ALJ's decision that he independently evaluated the evidence and improperly substituted his judgment for that" of the treating doctor). Several doctors opined as to the same or strikingly similar limitations insofar as absenteeism and physical limitations were concerned. Nothing in the Decision indicates that the ALJ considered the consistency and supportability that existed *between* opinions. *See* 20 C.F.R. § 404.1520c(b)(2) (providing the factors of supportability and consistency "are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions . . . to be"); 20 C.F.R. § 404.1520c(c)(2) (providing the factor of consistency will be considered when considering medical opinions such that the "more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be"). This is particularly

problematic given Deanne's statements that her impairments aggravated each other (fecal incontinence and HS) and the fact that she went to different specialists to address each impairment. On the one hand, the ALJ found fault with the primary care doctor's opinions, in part, because:

> as a family practitioner, [he] is the least qualified doctor to assess a number of the claimant's alleged impairments, considering that the claimant has a treating urologist, gastroenterologist, podiatrist, pain medicine doctor, previously had a treating dermatologist, and she has been evaluated by multiple neurosurgeons.

AR 109. On the other hand, the ALJ managed to find even *specialists'* opinions lacking or otherwise not entirely enlightening. *See* 20 C.F.R. § 404.1520c(c)(4) (providing that the factor of specialization will be considered as the "medical opinion or prior administrative medical finding of a medical source who has received advanced education and training to become a specialist may be more persuasive about medical issues related to his or her area of specialty than the medical opinion or prior administrative medical finding of a medical source who is not a specialist in the relevant area of specialty"); *see also* AR 96 (stating the dermatologist's letter was "primarily a discussion of what treatments have been tried and still could be tried to treat the [HS]"); AR 97 (noting the primary care doctor's March 5, 2018 statement that Deanne's functioning was limited due to pain, "but he fails to provide any information regarding specific functional limitations"); AR 100 (faulting the gastroenterologist's opinion for failure to provide a rationale); AR 107 (countering urologist's statement that Deanne's restroom breaks would be unscheduled with the comment that he "did not opine that the claimant would need extra restroom breaks during the workday"). In some instances, the ALJ essentially explained the significance or lack thereof of certain clinical examinations as reasons for why the opinions were not more persuasive. *See, e.g.*, AR 98 (ALJ stating "an independent review of [Deanne's

15

primary care doctor's] treatment notes and examination finding would support at most a conclusion that the claimant is obese and might have some pain related to her weight"). Ultimately, it is highly suspect that the ALJ was able to minimize the persuasiveness of several consistent opinions provided over nearly two years of time by different doctors in light of a hefty medical record detailing the ongoing, frequent visits Deanne made in order to treat her HS, spinal issues, and incontinence issues, among other things, with those very medical providers. *See* 20 C.F.R. § 404.1520c(c)(3)(i)-(v) (providing factors to be considered as to the medical source's relationship with the claimant include length of relationship, frequency of examinations, purpose of treatment relationship, extent of the treatment relationship, and examining relationship). It is one thing to discredit a claimant's testimony about her pain and limitations, in part, because the objective medical evidence does not support it. *See* 20 C.F.R. § 404.1529(c) (listing the factors an ALJ is to consider when assessing a claimant's subjective symptoms including among other factors objective medical evidence, activities of daily living, aggravating factors, and course of treatment). It is quite another thing to challenge a medical source's opinion that is obviously based, at least in part, on the objective evidence the source has acquired via examination and treatment. To the extent the ALJ rejected opinions as merely parroting Deanne's subjective statements, the bulk of the opinions make no such statement or even suggestion; on the contrary, it appears the doctors used what they knew of Deanne from their treatment of her in order to answer the questions posed.

Interestingly, the Commissioner argues that Deanne wrongly assumes that unpersuasive medical opinions should overthrow a decision based on substantial evidence. The Court is not convinced that the evidence upon which the ALJ relied is substantial evidence as it actually exists in the record or is evidence that she has chosen to unilaterally interpret as significant or insignificant or cherry-picked. *See*

16

*Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding"). The Court is not saying that the ALJ gave the incorrect amount of weight to each opinion, but it is saying that the ALJ did not sufficiently engage in the proper weighing analysis. *See Jeske v. Saul*, 955 F.3d 583, 587 (stating that an ALJ's decision will be upheld "if it uses the correct legal standards . . . is supported by substantial evidence . . . and builds an accurate and logical bridge from the evidence to the ALJ's conclusion"). The Court accordingly recommends that this case be remanded.

## IV

For the reasons set forth above, it is recommended that: 1) the Plaintiff's Motion for Summary Judgment (Doc. 12) be granted; 2) the Defendant's Motion for Summary Affirmance (Doc. 14) be denied; and 3) this case be remanded to the Commissioner of Social Security for further proceedings consistent with this Opinion Pursuant to 42 U.S.C. § 405(g), Sentence Four.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk within fourteen (14) days after service of this Report and Recommendation. FED. R. CIV. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

*It is so recommended*.

Entered on May 3, 2022.

s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE