E-FILED
Tuesday, 13 September, 2022  12:36:00 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| DEANNE S., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:21-cv-04042-SLD-JEH |
| | ) | |
| KILOLO KIJAKAZI[1], | ) | |
| | ) | |
| Defendant. | ) | |

ORDER

Before the Court are Plaintiff Deanne S.'s motion for summary judgment, ECF No. 12;

Defendant Acting Commissioner of Social Security Kilolo Kijakazi's ("the Commissioner")

motion for summary affirmance, ECF No. 14; Magistrate Judge Jonathan E. Hawley's report and

recommendation ("R&R"), ECF No. 17, recommending that the Court deny the Commissioner's

motion and grant Deanne's; the Commissioner's objection to the R&R, ECF No. 19; and

Deanne's objection to the R&R, ECF No. 20.  For the reasons that follow, the objections are

OVERRULED, the R&R is ADOPTED, the motion for summary judgment is GRANTED, and

the motion for summary affirmance is DENIED.

**BACKGROUND[2]**

**I.     Procedural Background**

On May 6, 2017, Deanne filed an application for disability insurance benefits, alleging

disability beginning May 10, 2015.  Her claim was denied initially and upon reconsideration.

Deanne then requested a hearing, which took place before an administrative law judge ("ALJ")

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi, Acting Commissioner of Social Security, is substituted for her predecessor.  The Clerk is directed to update the docket accordingly.
[2] The administrative record can be found at ECF No. 8. Citations to the record take the form: R. __.

on February 27, 2019.  On April 18, 2019, the ALJ issued a decision denying Deanne's claim for benefits.  Deanne appealed that decision to the Appeals Council, and the Appeals Council remanded it, so a second hearing was held on August 17, 2020.  On October 20, 2020, the ALJ issued a decision again denying Deanne's claim for benefits.  The Appeals Council denied Deanne's request for review on January 6, 2021; as such, the ALJ's October 20, 2020 decision is the Commissioner's final decision.  *See Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009).

Deanne timely filed this suit, seeking judicial review pursuant to 42 U.S.C. § 405(g), Compl. 1, ECF No. 1.  She filed a motion for summary judgment on September 28, 2021, and the Commissioner filed a motion for summary affirmance on December 9, 2021.  The matter was referred to Judge Hawley for a recommended disposition, and he entered an R&R on May 3, 2022.  The Commissioner filed an objection on May 9, 2022, and Deanne filed an objection on May 16, 2022.

## II.    ALJ Decision

In her decision issued on October 20, 2020, the ALJ conducted the standard five-step sequential analysis set forth in 20 C.F.R. § 404.1520(a)(4).  R. 39.  At step one, she found that Deanne had not engaged in substantial gainful activity since May 10, 2015, the alleged onset date of Deanne's disability.  R. 41.  At step two, she found that Deanne had the following severe impairments: degenerative disc disease of the cervical and lumbar spine with history of cervical fusion, hidradenitis suppurativa ("HS"), plantar fasciitis/plantar fascial fibromatosis, asthma, incontinence, obesity, anxiety, and post-traumatic stress disorder ("PTSD").  R. 41.  At step three, she found that the severity of Deanne's impairments, considered singly and in combination, did not meet or medically equal the criteria of any impairment listed in 20 C.F.R.

Part 404, Subpart P, Appendix 1.  R. 47.  She then found that Deanne had the residual functional

capacity ("RFC")

> to perform sedentary work as defined in 20 [C.F.R.] § 404.1567(a) except no
> more than occasional climbing of ramps and stairs, balancing, stooping, and
> crawling; no climbing of ladders, ropes, or scaffolds; no more than frequent
> bilateral handling; no more than occasional overhead reaching bilaterally; and no
> concentrated exposure to fumes, odors, dusts, gases, poor ventilation, or extreme
> cold or heat.  [Deanne] is limited to detailed but not complex work tasks, with a
> GED reasoning, mathematics, and language level of 4 or less, and no more than
> occasional interaction with coworkers, supervisors, and the general public.

R. 56.  At step four, the ALJ found that Deanne was unable to perform past relevant work as

actually or generally performed.  R. 113.  At step five, she found that, considering Deanne's age,

education, work experience, and RFC, there were jobs that existed in significant numbers in the

national economy that Deanne could perform.  R. 113.  Accordingly, the ALJ found that Deanne

was not disabled.  R. 114.

## DISCUSSION

### I.    Legal Standards

When a matter dispositive of a party's claim or defense is referred to a magistrate judge,

the magistrate judge will "enter a recommended disposition, including, if appropriate, proposed

findings of fact."  Fed. R. Civ. P. 72(b)(1).  A party may file written objections to the R&R

within fourteen days of its service.  *Id.* 72(b)(2).  The district judge will then "determine de novo

any part of the magistrate judge's disposition that has been properly objected to."  *Id.* 72(b)(3).

Any unobjected portions will be reviewed for clear error only.  *Johnson v. Zema Sys. Corp.*, 170

F.3d 734, 739 (7th Cir. 1999).

In cases in which an ALJ has denied social security benefits to the plaintiff, the court

"will uphold [the] ALJ's decision as long as the ALJ applied the correct legal standard, and

substantial evidence supports the decision."  *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir.

2004).  "Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* (quotation marks omitted).  While the ALJ "is not required to provide a complete and written evaluation of every piece of testimony and evidence," he "must build a logical bridge from the evidence to his conclusion."  *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015) (quotation marks omitted).  The court reviewing the ALJ's decision will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner" but must nevertheless "conduct a critical review of the evidence."  *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) (quotation marks omitted).

## II.  Analysis

Deanne argues that the ALJ erred as a matter of law in evaluating her HS; erred as a matter of law in evaluating her medical records; and improperly substituted her judgment for that of Deanne's medical providers.  Mem. Supp. Mot. Summ. J. 6, ECF No. 12-1.  Judge Hawley's R&R credited some of those arguments and rejected others; accordingly, both Deanne and the Commissioner object to portions of the R&R.  The Court will first address the portion of the record underlying Deanne's objection, then address the portion of the record underlying the Commissioner's.

### a.  Deanne's HS

At summary judgment, Deanne first argues that the ALJ erred as a matter of law in finding that her HS[3] did not meet or equal Listing 8.06.  *Id.* at 6, 11–17.  She appears to be

---

[3] Hidradenitis suppurativa "causes small, painful lumps to form under the skin.  The lumps usually develop in areas where . . . skin rubs together, such as the armpits, groin, buttocks[,] and breasts.  The lumps heal slowly, recur, and can lead to tunnels under the skin and scarring."  *Hidradenitis suppurativa*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/hidradenitis-suppurativa/symptoms-causes/syc-20352306 (last visited Aug. 1, 2021).

making several related arguments under this umbrella.  First, she argues that the ALJ erroneously construed the language in Section 8.00—which she deems the "prologue" to Listing 8.06 and the other skin-disorder listings—to wrongly restrict the meaning of "extensive [skin] lesions" to only the listed examples.  *Id.* at 13–15; *see also id.* at 13 ("[T]he ALJ interprets 'including but not limited to' as 'claimant must have exactly these symptoms, and only these symptoms' to prove she meets Listing 8.06.").  Relatedly, she contends the ALJ did not consider her symptoms of frequent and severe pain.  *Id.* at 15.  Finally, Deanne argues that "[e]ven if the ALJ had properly found that Deanne's condition did not meet Listing 8.06, the ALJ failed to adequately consider and discuss why Deanne's condition did not 'equal' [L]isting 8.06."[4]  *Id.* at 14.

In his R&R, Judge Hawley found that the ALJ "undeniably confronted the evidence related to the listing criteria," leading to a "discussion of that evidence . . . [that] was far from perfunctory."  R&R 8.  He ultimately concluded that the ALJ's finding that Deanne's HS did not meet Listing 8.06 "was supported by substantial evidence."  *Id.*  Deanne objects, maintaining her arguments that "[e]vidence of [her] condition meeting the listing is found throughout the record," Pl.'s Obj. 3, and that the ALJ misconstrued Listing 8.06's requirements, *id.* at 4.

Some background is in order before this Court reviews the issue de novo, *see* Fed. R. Civ. P. 72(b)(3).  Listing 8.06 is the listing associated with HS.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 8.06.  It requires "extensive skin lesions involving both axillae [*i.e.*, armpits], both inguinal [*i.e.*,

---

[4] Presumably because Judge Hawley found that the ALJ's consideration of medical equivalency was "undermine[d]" by flaws at step four, R&R 9, Deanne did not revive the equivalency argument in her objection, *see* Pl.'s Obj. 5 (noting that Deanne agrees with Judge Hawley's finding).  As Judge Hawley noted, "[a]n adjudicator's articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step 3."  R&R 9 (emphasis omitted) (quoting Social Security Ruling 17-2p at *4); *see also Wilder v. Kijakazi*, 22 F.4th 644, 653 (7th Cir. 2022) ("To be sure, Social Security Rulings lack the force and effect of law, but they are binding on ALJs.").

groin] areas or the perineum that persist for at least 3 months despite continuing treatment as prescribed." *Id.* Meanwhile, Listing 8.00 defines the term "extensive skin lesions" thusly:

> Extensive skin lesions are those that involve multiple body sites or critical body areas, and result in a very serious limitation. Examples of extensive skin lesions that result in a very serious limitation include but are not limited to:
>
> > a. Skin lesions that interfere with the motion of your joints and that very seriously limit your use of more than one extremity; that is, two upper extremities, two lower extremities, or one upper and one lower extremity.
> >
> > b. Skin lesions on the palms of both hands that very seriously limit your ability to do fine and gross motor movements.
> >
> > c. Skin lesions on the soles of both feet, the perineum, or both inguinal areas that very seriously limit your ability to ambulate.

*Id.* § 8.00(C)(1).

The ALJ devoted several pages of analysis to Deanne's HS at step three. R. 47–50. She began by addressing a letter from Deanne in which she described her HS and its effects. R. 47. She then discussed the meaning of "extensive skin lesions." R. 47–48. Noting that Deanne "certainly describes [her HS] as causing her very serious limitations," the ALJ addressed myriad statements from Deanne to that effect, including Deanne's statements that "she could not walk or sit," that HS "made it hard to use [her] arms," and that "when she had a bad eruption, she would often lay down, because it was too painful to sit." R. 48. However, after addressing those statements, the ALJ found that "the degree of limitation [Deanne] alleges far exceeds what can be supported by the medical evidence." R. 48. The ALJ wrote that Deanne's medical providers "ought to observe signs consistent with the alleged difficulties [Deanne] reports are caused by [HS]," R. 48, but at multiple medical appointments over a several-year span, Deanne presented normally with no ambulatory limitations or other functional limitations, R. 49. While acknowledging that, at many of those appointments, "the treating provider would not have been specifically looking for [HS] lesions," the ALJ observed that the medical records "only

6

infrequently mention complaints of skin lesions," and that Deanne's providers "routinely . . .

observed [her] to be cooperative with normal/appropriate mood and affect, not in any acute

distress," and with "normal gait, ambulation, and range of motion of the joints."  R. 50.  Any

documented abnormalities in gait were attributed to Deanne's other conditions, not HS.  R. 50.

Accordingly, the ALJ concluded Listing 8.06 was not met or medically equaled.  R. 50.

 The ALJ properly considered whether Deanne's HS met Listing 8.06.  Deanne's

argument that the ALJ erroneously interpreted Section 8.00 to encompass only the listed

examples of "extensive skin lesions" is belied by the record because the ALJ indeed

contemplated whether Deanne's HS led to "any other very serious limitation in functioning."

*See* R. 50 ("The medical evidence of record does not substantiate that [Deanne's] skin lesions

due to [HS] seriously limit the use of more than one extremity, seriously limit the ability to

ambulate, or result in any other very serious limitation in functioning.").  That the ALJ

referenced Deanne's mood and affect, any signs of distress, and her ability to stay seated also

supports that the ALJ's consideration of whether Deanne's HS led to very serious limitations

went beyond whether Deanne was impaired in the use of her extremities, fine/gross motor

movements, or ambulation.  *See* R. 50.  Similarly, although Deanne contends that the ALJ did

not consider Deanne's subjective accounting of her symptoms, and that "[n]o mention is made of

the impact that Deanne's extensive and permanent [sic] has on her functioning," Mem. Supp.

Mot. Summ. J. 14, the decision plainly indicates otherwise, R. 48; *see also* R. 50 (crediting

Deanne's claims that her HS lesions "are rather unpleasant and uncomfortable to deal with").

 The arguments in Deanne's objection take a slightly different tack, but also lack merit.

She contends that the ALJ "essentially acknowledged that Deanne met [Listing 8.06's] plain

language" because the ALJ noted "that she had lesions to the extent and location required by the

[l]isting . . . and that the duration required by the [l]isting was also met."  Pl.'s Obj. 2; *see also id.* at 3 (arguing that "the extent, location and duration of Deanne's HS lesions is not disputed"). But the ALJ did dispute the extent of Deanne's lesions because the crux of her decision was her determination that Deanne's lesions were not "extensive" because they caused no "very serious limitation."  *See* R. 50; *see also* R. 47–48 (discussing the specialized meaning of "extensive skin lesions").

Deanne further contends that Judge Hawley inaccurately summarized the record when he wrote that Deanne "did not report any skin problems" in the medical records the ALJ cited.  Pl.'s Obj. 3–4 (citing R&R 7).  The Court agrees that this is perhaps not the most accurate paraphrase, because, as the ALJ noted, Deanne sometimes did report skin problems.  *See* R. 49 (mentioning Deanne's reports of a left axilla lesion on January 15, 2018; a right axilla boil on April 13, 2018; and controlled HS on February 13, 2019).  But any imprecision from Judge Hawley is of no import because the record confirms that the ALJ did in fact consider Deanne's reports.  *See* R. 49.

Finally, Deanne argues that the ALJ gave too much credence to the "many medical records between 2017 and 2020 where skin lesions and lesions affecting Deanne's function are not documented."  Pl.'s Obj. 5.  That is, because "[a] claimant may be sitting in an exam room when a doctor comes in and may still be sitting on an exam table when the doctor is finished" and "[t]he doctor may not see the claimant walk" or move, "it is not logical that every doctor's note would include . . . findings [of poor function]."  *Id.*  As an initial matter, this argument was not made at summary judgment.  *See Etter v. Colvin*, 116-cv-00406-JMS-MJD, 2017 WL 661528, at *5 (S.D. Ind. Feb. 17, 2017) (refusing to consider an argument raised for the first time by the social security plaintiff in her objection to the magistrate judge's R&R (citing *United*

States v. Melgar, 227 F.3d 1038, 1040 (7th Cir. 2000))); cf. Melgar, 227 F.3d at 1040 ("[T]here

are good reasons for the rule that district courts should not consider arguments not raised initially

before the magistrate judge, even though their review in cases governed by 28 U.S.C.

§ 636(b)(1) is de novo.").  And it seems to the Court more like an articulation of general

principles rather than something that is specific to Deanne's own case.  Regardless, what Deanne

cautions against is not the case here.  Treatment notes observing Deanne's gait and mobility to

be normal were just a piece of evidence weighed by the ALJ to reasonably conclude that Listing

8.06 was not met.[5]  Reweighing the evidence to conclude otherwise would be error.  *See*

*McKinzey*, 641 F.3d at 889.  As the ALJ properly evaluated whether Deanne's HS met Listing

8.06, remand is not warranted on this ground.

### b.  Medical Opinions

At summary judgment, Deanne argues that the ALJ did not properly evaluate and give

appropriate weight to her providers' medical opinions supporting disability.  Mem. Supp. Mot.

Summ. J. 17–21; *see also id.* at 7–11 (summarizing her providers' opinions).  This portion of

Deanne's briefing is somewhat difficult to follow; indeed, the Commissioner argues that it

should be deemed waived as ambiguous and underdeveloped.  Mem. Supp. Mot. Summ. Aff. 8,

ECF No. 15.  But as the Court construes it, Deanne's primary contention is that it "strains

credulity that all of [her] treaters in all of their opinion statements are somehow invalid or

incorrect."  Mem. Supp. Mot. Summ. J. 18.  Deanne argues that although her providers were

"extremely consistent in describing disabling impairments," *id.* at 11, the ALJ "disregarded all

treating source statements" and both consultative exams, at least to some extent, *id.* at 20.  She

---

[5] And the ALJ herself accounted for Deanne's argument at two separate points in her analysis, noting that while many of Deanne's providers would not necessarily be looking for skin lesions, Deanne also rarely reported skin problems to her providers.  *See* R. 49; *see also* R. 50.

also argues that the consultative exams "don't specifically indicate that [she] can perform substantial gainful activity," *id.* at 18; that the ALJ discounted symptoms caused by her cervical spine impairment, *id.* at 19; that the ALJ improperly evaluated limitations caused by her incontinence, *id.* at 19–20; and that the ALJ's RFC did not fully account for all her impairments, *id.* at 20–21.

Judge Hawley agrees that the Commissioner "did not sufficiently engage in the proper weighing analysis." R&R 17. He writes that the ALJ's decision "smacks" of playing doctor, noting that several of Deanne's providers "opined as to the same or strikingly similar limitations insofar as absenteeism and physical limitations were concerned." *Id.* at 14. He notes that, despite those similarities, "[n]othing in the [ALJ's decision] indicates that the ALJ considered the consistency and supportability that existed *between* opinions," deeming this omission "particularly problematic" because Deanne stated that her impairments aggravated one another. *Id.* at 14–15. To Judge Hawley, "it is highly suspect that the ALJ was able to minimize the persuasiveness of several consistent opinions provided over nearly two years of time." *Id.* at 16. Accordingly, he recommends that Deanne's case be remanded. *Id.* at 17.

The Commissioner objects. Comm'r's Obj. 1. She argues that "the substantial evidence standard requires deference to the ALJ as factfinder" and that the ALJ, in fact, relied on substantial evidence in evaluating each providers' opinion. *Id.* at 1–2. She summarizes each opinion, explaining each time why she believes the ALJ's analysis was proper. *Id.* at 2–5.

In light of the nature of the objection, completeness requires the Court to independently, albeit briefly, recount each medical opinion submitted by Deanne and the ALJ's analysis of each.

### 1. Dr. Rachel Koziczkowski

Dr. Rachel Koziczkowski is a dermatologist.  *See* R. 969–70.  Deanne began seeing her in September 2017 for lesions beginning seven months prior.  *See* R. 972.  In a medical opinion letter dated January 29, 2018, Dr. Koziczkowski opined that Deanne "has had very frequent recalcitrant disease that is causing distress and impairment of daily activities."  R. 969.  Dr. Koziczkowski both evaluated Deanne herself and considered Deanne's reports of her symptoms.  R. 969.  Her letter indicates that between May 2017 and January 2018, Deanne experienced HS flares in various bodily regions.  R. 969.

The ALJ found Dr. Koziczkowski's letter was "not as beneficial to [Deanne's] disability claim as [Deanne] seems to believe."[6]  R. 96.  Deeming the letter "primarily a discussion of what treatments have been tried and still could be tried," the ALJ found that Dr. Koziczkowski "had only been treating [Deanne] for six months" and that she "indicated that a better prognosis could be determined in a couple months" after further treatment.  R. 96.  The ALJ also found that her "statements about work-related limitations were a recitation of [Deanne's] reported difficulties" rather than her own opinions.  R. 96.  And the ALJ found that Dr. Koziczkowski's treatment notes presented Deanne's condition as both responding well to treatment and not particularly limiting.  R. 97; *see also* R. 984–85 (noting that Dr. Koziczkowski "th[ought] there [wa]s more that c[ould] be done for [Deanne's] disease before disability [wa]s considered"); R. 986 (observing no active lesions at an appointment on March 13, 2018).

### 2.  Dr. Julio Santiago

Dr. Julio Santiago is a primary care provider; Deanne began seeing him in early 2018.  *See* R. 967.  He provided multiple opinions, all of which the ALJ gave little to no weight.

---

[6] The Appeals Council initially remanded Deanne's case because the ALJ's initial decision did not account for Dr. Koziczkowski's opinion.  R. 262 ("The record does not fully support the decision's description of normal/intact skin.  Further discussion of the claimant's severe impairments and the reports from her treating source is needed to fully evaluate her functional limitations.").

On March 5, 2018, Dr. Santiago completed a Skin Lesion Questionnaire.  R. 966.  The first question on that form asked whether Deanne had psoriasis, atopic dermatitis, or dyshidrosis, and Dr. Santiago responded no.  He noted that Deanne had tried four treatments for axillae and groin lesions and had responded to treatment, leading to some "control," but there was "no cure." R. 966 (capitalization altered).  His prognosis of Deanne's skin condition was "fair, condition may progress."  R. 966 (capitalization altered).  The ALJ found Dr. Santiago's opinions in the form were "of no persuasive value" because the questionnaire asked about conditions Deanne did not have; because his report of groin lesions was inconsistent with his treatment notes from the two months prior, which reported either no lesions or lesions only on Deanne's axillae; and because Dr. Santiago did not describe any functional limitations specifically.  R. 97.

In a letter dated March 16, 2018, Dr. Santiago wrote that Deanne had chronic HS, syringomyelia with radiculopathy, postherpetic neuralgia, complex regional pain syndrome, asthma, allergic rhinitis, stress urinary and fecal incontinence, and chronic pain syndrome.  R. 1047.  His prognosis was that Deanne's conditions had a high probability of being progressive and/or persistent, and consequently, that Deanne would have significant difficulty obtaining gainful employment.  R. 1047.  To the ALJ, this letter was "of essentially no persuasive value" because a number of the listed conditions were not reflected in Dr. Santiago's treatment notes, and "[t]herefore, Dr. Santiago has not heard complaints of or observed clinical evidence of almost every chronic condition he identifies."  R. 97–98.  Although Dr. Santiago would have had access to other doctors' records, the ALJ noted that he "would have to compare the radiographic imaging with his examination findings, which were essentially normal."  R. 98.  The ALJ thus determined that Dr. Santiago "could not reliably conclude . . . that [Deanne's] functioning was significantly limited."  R. 98.  Per the ALJ, an "independent review" of Dr. Santiago's notes

"would support at most a conclusion that [Deanne] is obese and might have some pain related to her weight, as well as possibly some residual pain from the history of cervical fusion." R. 98.

On March 20, 2018, Dr. Santiago completed a medical opinion form regarding Deanne's ability to perform work-related activities. R. 967. Noting on that form that Deanne had HS, syringomyelia, complex regional pain syndrome, and fecal incontinence, Dr. Santiago reported that Deanne could stand and walk or sit fewer than two hours over the course of an eight-hour workday; that she could carry and lift fewer than 10 pounds; that she needed the freedom to shift positions at will between; and that she needed to lie down at unpredictable times. R. 967. He also reported that Deanne would likely need to be absent from work an average of more than three times each month. R. 967. To the ALJ, these opinions were "of no persuasive value" because Dr. Santiago did not provide any rationale for Deanne's specific limitations and no objective basis would substantiate the "extreme functional limitations" he identified. R. 98.

Also "of no persuasive value" was a mental impairment questionnaire completed by Dr. Santiago on that same date. R. 99. In that questionnaire, Dr. Santiago reported that Deanne had a diagnosis of adjustment disorder causing symptoms of sleep disturbance, emotional lability and impaired impulse control, and decreased energy, which imposed slight to moderate functional limitations on Deanne's memory, concentration, punctuality, coordination, decision-making, and public-facing interaction. R. 992–93. He reported that Deanne would miss work an average of two times each month because of those symptoms. R. 993. But the ALJ found that Dr. Santiago never set forth or established Deanne's diagnosis of adjustment disorder; that treatment records did not document emotional lability or impulse control issues; and that the "paucity" of evidence in Dr. Santiago's treatment notes meant he "was not in a position to set forth reliable opinions regarding mental functioning." R. 99.

13

Dr. Santiago completed another medical opinion form on July 3, 2019.  R. 1683.  He listed Deanne's diagnoses as idiopathic syringomyelia, idiopathic peripheral neuropathy, and HS, also noting that Deanne had a history of incontinence.  R. 1683.  Dr. Santiago did not indicate that Deanne's ability to stand and walk or sit was limited but indicated that Deanne's maximum ability to stand and walk or sit in an eight-hour workday was fewer than two hours each.  R. 1683.  He again indicated that Deanne could only carry fewer than 10 pounds; that she needed the freedom to shift positions at will; and that she needed to lie down at unpredictable times.  R. 1683.  Finally, he indicated that Deanne's conditions would result in absences from work an average of more than three times each month.  R. 1683.  In a letter dated July 17, 2019, Dr. Santiago discussed Deanne's recurrent lesions, which her incontinence exacerbated; her increased pain since childbirth in March 2019; and her other conditions, which he reported had "worsened."  R. 1899–900.  Considering the form and letter together, the ALJ found them "of essentially no persuasive value," as she found their contents inconsistent with Dr. Santiago's treatment records and some of Deanne's statements.  R. 101–02 ("The letter from Dr. Santiago misrepresents a number of the claimant's conditions or alleged conditions.  The statements related to functional difficulties are heavily reliant on [Deanne's] subjective allegations, for which there is not objective medical support in Dr. Santiago's treatment records.").

Finally, Dr. Santiago completed a medical opinion form on August 1, 2019, opining, among other things, that Deanne's ability to sit was impaired; that she could sit no more than 10 minutes before changing positions; and that she would need to use the restroom frequently.  R. 1917–19.  The ALJ found this "of limited persuasive value," noting that Dr. Santiago failed to provide a rationale for many of his opinions and that some of his opinions were inconsistent with opinions he had previously given.  R. 103.

### 3.    Dr. Amit Patel

Deanne began seeing Dr. Amit Patel, a gastroenterologist, in February 2018.  *See* R. 968, 1049.  In a medical opinion questionnaire dated May 1, 2018, Dr. Patel opined that Deanne had a diagnosis of fecal incontinence with symptoms of diarrhea and rectal bleeding; that she was treated with a colonoscopy, lab tests, other diagnostic testing as needed, and medications; and his medical findings included diverticulitis and normal labs.  R. 968.  Dr. Patel opined that Deanne's impairments would cause her to be absent from work more than three times each month on average.  R. 968.  He labeled questions on the form about sitting, standing, walking, lifting, carrying, and lying down during the workday as not applicable.  R. 968.  The ALJ found Dr. Patel's opinions "of limited persuasive value," as he failed to provide a rationale for why Deanne would be absent from work.  R. 100 ("Fecal incontinence, diarrhea, and rectal bleeding could certainly result in absenteeism from work and/or difficulty maintaining a job long-term, but Dr. Patel did not provide any information about the frequency or severity of the claimant's symptoms.").  She further found that Dr. Patel's treatment notes did not establish fecal incontinence "that would be inconsistent with gainful employment" because the clinical examinations and March 2018 colonoscopy results were "unremarkable."  R. 100.

### 4.    Physical Therapist David Scott

David Scott, a physical therapist who Deanne saw "off and on" from 2014 to 2019, completed a medical opinion form on November 15, 2019.  R. 2597–98.  He opined that Deanne could stand and walk or sit a maximum of less than two hours over the course of an eight-hour workday; that Deanne could lift a maximum of less than 10 pounds; that she needed the freedom to shift positions at will; and that she needed to lie down at unpredictable times during the workday.  R. 2597.  He opined that Deanne would need to be absent an average of more than

15

three times each month as a result of her impairments.  R. 2597.  The ALJ found these opinions "of limited persuasive value," observing that Deanne had been late to two recent appointments and, "[m]ore significantly," inconsistent treatment records "call into question the severity of [her] alleged weakness."  R. 104.  Thus, the ALJ found that "[t]here is not any compelling evidence of weakness that would substantiate the extreme limitations in exertional abilities set forth by PT Scott, nor his opinion regarding absenteeism."  R. 105.

### 5.    Licensed Clinical Social Worker Kurt Doyle

Kurt Doyle is a licensed clinical social worker who completed two mental impairment questionnaires regarding Deanne.  R. 2097–98.  On an "anxiety" questionnaire dated April 2, 2020, he noted that Deanne had diagnoses of generalized anxiety disorder and PTSD; that her medications could cause drowsiness; that she experienced restlessness, fatigue, concentration difficulties, irritability, muscle tension, sleep disturbance, panic attacks, and other symptoms; that she suffered from intrusive thoughts and repetitive behaviors; and that she had mild/moderate to marked impairments in her comprehension and memory, concentration, ability to interact with others, and ability to adapt or manage herself.  R. 2097 (capitalization altered). On a "trauma/stress disorder" questionnaire completed that same date, he reiterated some of those opinions and also noted that Deanne experienced repeated trauma due to multiple miscarriages; avoided external reminders of those events; and experienced mood and behavior disturbances.  R. 2098 (capitalization altered).  To the ALJ, these findings were "of limited persuasive value" because April 2, 2020 was Deanne's second session with Doyle.  R. 105.  The ALJ also found that it hard to "credibly" argue that Deanne avoids reminders of her miscarriages because she obtained guardianship of her nephew[7] and later had another child.  R. 105–06.

---

[7] At the second hearing, Deanne explained she obtained temporary guardianship of her nephew so her sister could enter drug rehabilitation, and if she "knew then what [she] know[s] now, [she] wouldn't have him."  R. 150.

Ultimately, the ALJ found that Doyle's "opinions . . . regarding [Deanne's limitations in memory, comprehension, and adapting and managing herself] are generally consistent with the overall evidence of record," but there was "certainly not any objective findings in the documented treatment notes . . . that would substantiate [the other limitations]."  R. 106.

### 6.    Dr. Engebrecht

Dr. Brian Engebrecht is Deanne's urologist.  *See* R. 1300.  He noted in a May 21, 2019 medical opinion form that he had been treating Deanne for three years for overactive bladder and fecal incontinence; that Deanne needed the freedom to shift positions at will; that she needed to lie down at unpredictable times during the workday; and that she would need to void "routinely" every 30 minutes.  R. 1306.  He also found that those conditions would cause Deanne to be absent from work an average of three days each month.  R. 1306.  In a June 3, 2020 form, Dr. Engebrecht noted that Deanne's incontinence was exacerbated by infections; that on average, she experiences urinary incontinence twice daily; that she seemed anxious at appointments; that she could sit no more than one hour and stand no more than 30 minutes; that she needed a job with ready restroom access; and that she would likely need an average of two unscheduled restroom breaks each eight-hour workday.  R. 2576–2580.  Considering these opinions together, the ALJ found them "of limited persuasive value," noting that Dr. Engebrecht did not provide rationales for many of his assertions regarding Deanne's limitations.  R. 107.  Moreover, "Dr. Engebrecht said the claimant needed to void routinely every 30-60 minutes, but that is just repetition of what the claimant has told him."  R. 107.  She also noted that Dr. Engebrecht did not opine that Deanne would need extra restroom breaks.  R. 107.

As the above recitation of the record makes clear, this is not a case in which medical opinions were tossed aside without explanation.  But the length and detail of the decision does

17

not immunize it from remand, so the Court must still evaluate whether the ALJ reached her decision by applying the correct legal standard and whether substantial evidence supports it. *See Barnett*, 381 F.3d at 668.

Deanne filed her application for benefits on May 6, 2017, so 20 C.F.R. § 404.1520c sets the framework for an ALJ's evaluation of medical opinions. Per § 404.1520c(a), the most important factors for an ALJ to consider are supportability and consistency. Supportability means that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(1). Consistency means that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(2). The ALJ also considers the treater's relationship with the claimant, which encompasses the length, purpose, and extent of the treatment relationship; frequency of examinations; and examining relationship, *id.* §§ 404.1520c(c)(3)(i)–(v), as well as the treater's specialization and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding," *id.* §§ 404.1520c(c)(4)–(5). The regulations further note that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." *Id.* § 404.1520c(a).

In her motion for summary judgment, Deanne notes that all of her providers stated that she would miss an average of at least several workdays per month and consistently reported that

she would require "frequent breaks in excess of those normally allowed an employee on a daily

basis."  Mem. Supp. Mot. Sum. J. 20.  She emphasizes that "[t]here is no indication that these

physicians falsified records and opinions, relied on subjective evidence only, or[] were somehow

extraordinarily sympathetic to or hoodwinked by Deanne."  *Id.* at 18.  The Commissioner

responds that Deanne "wrongly argues that the sheer number of medical opinions she submitted

carries her burden."  Mem. Supp. Mot. Sum. Aff. 8.  She also points out that the ALJ "did not

find that [Deanne] deceived her physicians or that her physicians lied to the agency on her

behalf."  *Id.* at 9.

That is correct.  But if Deanne's providers indeed all opined truthfully, it becomes all the

more curious the extent to which those opinions aligned.  For example, Dr. Engebrecht and Dr.

Patel—Deanne's urologist and gastroenterologist—as well as primary care provider Dr. Santiago

agreed that Deanne's conditions would require her to be absent from work several times per

month.  *See, e.g.*, R. 968, 1306, 1683.  Dr. Engebrecht and Dr. Santiago agreed that Deanne

would need to use the restroom often throughout the day and sometimes irregularly, repeatedly

shift positions, and lie down unpredictably, and also that she could not sit or stand continuously

for even relatively short periods of time.[8]  *See, e.g.*, R. 967, 1306, 1917–19, 2576–2580.  Those

opinions, in turn, are consistent with Deanne's statements that she needed to use the restroom

every 30 minutes and sometimes at unpredictable times; spent most of the day lying down using

a special pillow; had poor stamina; and could barely "do anything" when she had an HS lesion.

*See* R. 140, 152, 153, 169.

Yet despite the fact that the Commissioner concedes in her objection that "the opinions

were in agreement on some points," Comm'r's Obj. 1, not once were these similarities discussed

---

[8] Deanne's physical therapist also found that Deanne would need to shift positions at will and lie down
unpredictably but did not specifically opine on the effects of her incontinence or HS.  *See* R. 2597–98

by the ALJ.  *See Koch v. Saul*, CAUSE NO. 4:19-CV-103-TLS, 2022 WL 2116892, at *6 (N.D. Ind. June 13, 2022) (remanding because "[w]hile the ALJ used the same treatment notes and the same reasoning to reject both opinions, he never discussed or analyzed how the opinions were consistent with each other as required by [the regulations]"); *Etherington v. Saul*, CAUSE NO. 1:19-CV-475-JVB-JPK, 2021 WL 414556, at *4 (N.D. Ind. Jan. 21, 2021), *report and recommendation adopted sub nom. Bart E. v. Saul*, CAUSE NO. 1:19-CV-475-JVB-JPK, 2021 WL 411440 (N.D. Ind. Feb. 5, 2021) (recommending remand where consistency between the medical opinions was ignored by the ALJ); *see also Gerstner v. Berryhill*, 879 F.3d 257, 263 (7th Cir. 2018) (remanding where, among other faults, a practitioner's "supporting opinion" identifying functional limitations similar to those identified by a doctor "went unmentioned" by the ALJ in her analysis of the doctor's opinion as to functional limitations); *Knapp v. Berryhill*, 741 F. App'x 324, 327–28 (7th Cir. 2018) (also discussing consistency between medical opinions).  The consequences of this omission are magnified where the Court is not convinced the ALJ did not "play doctor" in her discounting of certain opinions, particularly Dr. Engebrecht's.  *See, e.g.*, R. 107 (discounting Dr. Engebrecht's opinions in part because of the ALJ's unsupported assertion that incontinence would not cause a patient to have difficulty sitting still, not cause a patient to need to lie down, and not cause a patient to have difficulty lifting).

The Court takes no position on whether the consistencies between the medical opinions should be credited or rejected; that would be improper.  But because the ALJ's decision offers no discussion whatsoever of the consistencies between the opinions, the Court cannot be certain whether those consistencies were properly weighed by the ALJ or whether she "ignore[d] an entire line of evidence that is contrary to the ruling," *Golembiewski v. Barnhart*, 322 F.3d 912,

917 (7th Cir. 2003). Accordingly, this case should be remanded for further exploration of those consistencies.

## CONCLUSION

For the foregoing reasons, Plaintiff Deanne S.'s objection, ECF No. 20, is OVERRULED, Defendant Acting Commissioner of Social Security Kilolo Kijakazi's ("the Commissioner's") objection ECF No. 19, is OVERRULED, and Magistrate Judge Jonathan E. Hawley's report and recommendation, ECF No. 17, is ADOPTED. Deanne's motion for summary judgment, ECF No. 12, is GRANTED, and the Commissioner's motion for summary affirmance, ECF No. 14, is DENIED. The Commissioner's decision denying benefits to Deanne is REVERSED, and the cause is REMANDED for further proceedings consistent with this Order. The Clerk is directed to enter judgment and close the case.

Entered this 13th day of September, 2022.

s/ Sara Darrow

SARA DARROW<br>
CHIEF UNITED STATES DISTRICT JUDGE